THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| STEPHEN R. SNOW,<br><br>     Plaintiff,<br>v.<br><br>AUTOZONERS, LLC,<br><br>     Defendant. | **MEMORADUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Case No. 2:22-cv-00513-JNP-CMR<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Cecilia M. Romero |

Plaintiff Stephen Snow suffers from several mental and physical impairments, including complex post-traumatic stress disorder, anti-social personality disorder, major severe depression, partial knee replacement, osteoarthritis, and other musculoskeletal disorders. To treat these disorders, Snow uses various medications, including medical marijuana. Snow sued his employer, defendant Autozoners, LLC ("AutoZone"), for unlawful discrimination, harassment, and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as disclosure of confidential medical information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6.

Before the court is AutoZone's Motion to Dismiss for Failure to State a Claim (ECF No. 6). For the reasons set forth herein, the court GRANTS AutoZone's Motion to Dismiss Plaintiff's HIPAA claim WITH PREJUDICE and Plaintiff's other claims WITHOUT PREJUDICE.

## BACKGROUND[1]

In May 2021, AutoZone hired Snow to work as a Customer Service and Sales Representative at its store # 867, located in West Valley City, Utah. ECF No. 2 ¶ 12. When Snow was hired, he informed the company that he suffered from various disabilities, including complex post-traumatic stress disorder, anti-social personality disorder, osteoarthritis, and other musculoskeletal disorders. *See id.* ¶¶ 9, 15. He did not, however, disclose that, as part of his treatment for these disorders, he was prescribed and used medical marijuana and had a medical marijuana card. *Id.* ¶¶ 11, 15.

On June 4, 2021—Snow's third day working at AutoZone—Ben Martinez, a parts sales and night manager at store # 867, asked Snow "to sell him 3.5 ounces of marijuana." *Id.* ¶ 16. Snow does not know how Martinez knew of his medical marijuana card. *Id.* ¶ 17. Shortly thereafter, Snow reported the incident to Tommy Grames, the manager of store # 867, and asked Grames to terminate Martinez's employment or, at a minimum, to ensure that he would no longer work with Martinez. *Id.* ¶¶ 18–20. Grames refused both requests. *Id.* ¶¶ 19–20.

A week later, Snow arrived at work to train with Sam Clark, the commercial sales manager, and "Clark stated to him, 'You're of no use to me because you smoke pot.'" *Id.* ¶ 22. Snow does not know how Clark was aware that he used medical marijuana. *Id.* That same day, Grames asked Snow for a copy of his "medical records and a copy of his medical marijuana card to send to corporate." *Id.* ¶ 23. Although Snow initially refused, he relented when he was told that he would be terminated if he did not provide this information. *Id.*

---

[1] "The facts are recited from the complaint on a motion to dismiss, but the court makes no findings of facts as to such allegations." *See Martineau v. Currutt*, No. 1:21-cv-00045-JNP-DBP, 2022 U.S. Dist. LEXIS 11357, at *2 n.2 (D. Utah Jan. 19, 2022) (citation omitted).

Over the next several weeks, Snow had other negative experiences at work. On one occasion, Snow "asked Grames about how he could get on a management path, but was told it was closed to him because he had a medical marijuana card." *Id.* ¶ 24. Grames later reiterated that Snow "was ineligible for a promotion and would not be able to progress in the company." *Id.* ¶ 32. On another occasion, Clark told Snow, "I don't care if you're high, I just need you to drive." *Id.* ¶ 27. Moreover, Snow continued to experience aggravation from Martinez, who asked Snow "to procure some cocaine or Valium for him" and, on one shift, "'badger[ed]' and 'ridicule[d]'" Snow by claiming that the District Manager for the Greater Salt Lake area "was coming to the store to watch [Snow] to see if he was under the influence (of marijuana) while working, stating [Snow] was not promotable, and stating [Snow] would be terminated because of his medical marijuana card." *Id.* ¶ 28–29. In addition, during a later episode, Martinez told Snow, "You have a [medical marijuana] card, just go get stoned," when Snow commented that his back was hurting." *Id.* ¶ 35. Snow reported these incidents to management, but his requests to Grames to have Martinez terminated or scheduled on a different shift were denied. *See id.* ¶¶ 25, 31.

On September 21, 2021, Snow filed a charge of discrimination with the Utah Labor Commission's Antidiscrimination and Labor Division ("UALD") and the United States Equal Employment Opportunity Commission ("EEOC") in which he alleged that AutoZone "had discriminated against him based on his disability and had retaliated against him for engaging in protected activity." *Id.* ¶ 34. In the wake of Snow filing the charge, AutoZone conducted an investigation. *Id.* ¶ 40. The investigation substantiated Snow's claims regarding Martinez's comments and, as a result, Martinez was terminated. *Id.* Clark—who also made comments about Snow's use of medical marijuana—was not disciplined, however. *Id.*

During this same period, Snow had a performance review. *Id.* ¶ 37. In the performance review, Snow received a "good" review from Grames and a raise of $0.08 per hour. *Id.* ¶ 37. Other employees, however, received larger raises, "some up to $3.00 per hour." *Id.*

Around November 14, 2021, Snow was transferred to AutoZone store # 6295, as he requested. *Id.* ¶ 41. After transferring to store # 6295, Snow "was placed on the manager track and was promoted to" parts sales manager on February 27, 2022. *Id.* ¶ 43.

Based on the foregoing, Snow sued AutoZone for unlawful discrimination, harassment, and retaliation in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, as well as disclosure of confidential medical information in violation of HIPAA, 42 U.S.C. § 1320d-6. ECF No. 2. AutoZone moved to dismiss all of Snow's claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 6.

## LEGAL STANDARD

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). Thus, when considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

A complaint survives a motion to dismiss for failure to state a claim when the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As a result, the complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (citation omitted)); *Burnett*, 706 F.3d at 1236 ("Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." (citation omitted)).

## ANALYSIS

### I.     Claim I: ADA Discrimination Claim

AutoZone moves to dismiss Snow's ADA discrimination claim. ECF No. 6 at 1–2, 6–8. AutoZone contends that the claim must be dismissed because, in part, Snow's allegations of discrimination are based on his use of medical marijuana—rather than his underlying disabilities—and, in any event, Snow fails to allege that he was subjected to an adverse employment action based on his disabilities. *Id.* at 6–8. The court agrees that Snow's ADA discrimination claim must be dismissed.

"[I]n order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he '(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.'" *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011) (citation

omitted). "In order to demonstrate 'discrimination,' a plaintiff generally must show that he has suffered an 'adverse employment action because of the disability.'" *Id.* at 1038 (citation omitted).

The first issue is whether Snow qualifies as a disabled person under the ADA—that is, whether the disability or disabilities from which his allegations stem are cognizable under the statute. Under 42 U.S.C. § 12114, "a qualified individual with a disability shall not include any employee . . . who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." The ADA, in turn, defines illegal drug use as "the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act [("CSA")]," *see* 21 U.S.C. § 801 *et seq.*, but excludes from that definition "the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law." 42 U.S.C. § 12111(6)(A). Accordingly, courts have grappled with whether the prescribed use of medical marijuana—which is a Schedule I illegal drug under the CSA, 21 U.S.C. § 812(c)(c)(10)—falls within the exception for drug use supervised by a licensed health care professional. These courts have determined that, "in light of the text, the legislative history, . . . and the relationship between the ADA and the CSA, . . . doctor-supervised marijuana use is an illegal use of drugs not covered by the ADA's supervised use exception." *James v. City of Costa Mesa*, 700 F.3d 394, 403 (9th Cir. 2012) (citing cases); *see also, e.g.*, *Eccleston v. City of Waterbury*, No. 3:19-cv-1614 (SRU), 2021 U.S. Dist. LEXIS 52835, at *17–18 (D. Conn. Mar. 22, 2021) ("I agree with the courts that have reasoned that even physician-supervised medical marijuana use does not fit within the supervised-use exception identified in the ADA.").

The court agrees with this precedent. Although perhaps not the only reasonable interpretation of the supervised-use exception, the court interprets the exception to apply only

when the supervised use of the drug is authorized under the CSA or other federal law. *See* 42 U.S.C. § 12111(6) ("Such term [('illegal use of drugs')] does not include the use of a drug taken under supervision by a licensed health care professional, *or other uses authorized* by the Controlled Substances Act or other provisions of Federal law." (emphasis added)). Such an interpretation is the only one that "fully harmonizes the ADA and the CSA." *James*, 700 F.3d at 402; *see also Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *17–18 ("To read the statute otherwise would place it in direct tension with the clear provisions of the CSA—a statute the ADA relies upon to define the term 'illegal drug use.'"). Moreover, as the *James* court noted, "[a] contrary interpretation of the exception for 'use of a drug taken under supervision by a licensed health care professional' would allow a doctor to recommend the use of *any* controlled substance—including cocaine or heroin—and thereby enable the drug user to avoid the ADA's illegal drug exclusion. Congress could not have intended to create such a capacious loophole, especially through such an ambiguous provision." 700 F.3d at 403.

Because medical marijuana remains illegal under federal law, an ADA discrimination claim is not available for individuals who claim that they suffered discrimination based on their use of medical marijuana. *See id.* at 397 n.3 ("[T]he ADA does not protect medical marijuana users who claim to face discrimination *on the basis of* their marijuana use."). "That remains true even where a plaintiff can establish that the drug use is linked to an underlying disability recognized by the ADA and taken under the supervision of a physician." *Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *18.

Here, the only reasonable inference from the allegations in Snow's complaint is that, to the extent he even faced discrimination, the discrimination was related to his use of medical marijuana, not his underlying disabilities. Specifically, Snow alleges that he faced discrimination (1) when

7

AutoZone "failed to take prompt and effective remedial action" in response to his complaints about other employees' statements and conduct, (2) when it foreclosed him "from getting on a management path," and (3) when it failed to give him a raise that was as large as the raises other employees received. ECF No. 2 ¶¶ 37, 49; ECF No. 17 at 10. With respect to management's response to Snow's complaints, the statements and conduct of which Snow complained were Martinez's request that Snow sell him marijuana, *id.* ¶¶ 16–20; Martinez's statements that the district manager "was coming to the store to watch [Snow] to see if he was under the influence (of marijuana) while working," that Snow "was not promotable," and that Snow "would be terminated because of his medical marijuana card," *id.* ¶¶ 29–31; Martinez's statement to Snow that "You have a [medical marijuana] card, just go get stoned," in response to a comment Snow made about his back hurting, *id.* ¶¶ 35–36; and Clark's comments about Snow's "usage of medical marijuana," *id.* ¶ 40. Accordingly, to the extent that management failed to address Snow's complaints, it failed to remedy adverse treatment from other employees that was based on Snow's use of medical marijuana, not his underlying disabilities. In fact, from the face of the complaint, it is not even clear that Martinez and Clark were aware of the details of Snow's underlying disabilities (the complaint does allege that, when hired, Snow disclosed to "the company" that he had various disabilities, but it does not state whether Martinez and Clark were included in "the company," *id.* ¶ 15).

Similarly, to the extent that Snow "was foreclosed from getting on a management path," *id.* ¶ 49, it was related to Snow's use of medical marijuana, not his underlying disabilities. Indeed, Snow explicitly alleges that, "early into his employment, he asked Grames about how he could get on a management path, but was told it was closed to him *because he had a medical marijuana card*." *Id.* ¶ 24 (emphasis added). Moreover, at a later point, Grames told Snow that he "was

8

ineligible for a promotion and would not be able to progress in the company," *id.* ¶ 32, and Snow himself contends that the appropriate inference was "that he was not eligible because of his *having a medical marijuana card and using medical marijuana*," ECF No. 17 at 10 (emphasis added).

Likewise, the complaint is devoid of any allegation that Snow received a lower raise than other employees because of his underlying disabilities independent of his use of medical marijuana. Thus, the only reasonable inference, considering the complaint as a whole, is that he received the allegedly discriminatory raise because of his use of medical marijuana, not his underlying disabilities.

Accordingly, because the allegedly adverse treatment to which Snow was subjected stemmed from his use of medical marijuana—rather than from his underlying disabilities, separate and apart from the medical marijuana use—Snow has failed to adequately allege that he suffered discrimination based on a cognizable disability. *See James*, 700 F.3d at 397 n.3; *Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *17–18. As a result, Snow's ADA discrimination claim is foreclosed and the court grants AutoZone's motion to dismiss the claim.

That said, even if an ADA discrimination claim were available to individuals who face discrimination based on their use of medical marijuana, the court would still grant AutoZone's motion. Specifically, Snow has failed to adequately allege that he suffered "an adverse employment action [(i.e., discrimination)]." *See C.R. England*, 644 F.3d at 1037–38 (internal quotation marks and citation omitted). Although the Tenth Circuit "liberally defines the term 'adverse employment action,' it generally refers only to 'acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or [to] a decision causing a significant change in benefits.'" *Benavides v. City of Okla. City*, 508 F. App'x 720, 725 (10th Cir. 2013) (unpublished) (quoting *C.R. England*,

644 F.3d at 1040). "At the very least, 'a plaintiff must show that the alleged adverse action caused more than *de minimis* harm to or a *de minimis* impact upon [his] job opportunities or status.'" *Id.* Accordingly, "not every perceived indignity will rise to the level of an adverse employment action." *C.R. England*, 644 F.3d at 1041; *see also id.* at 1041–42 ("The idea behind requiring proof of an adverse employment action is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." (quoting *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 575–76 (7th Cir. 2001))).

Here, Snow contends that he suffered adverse employment actions when AutoZone "failed to take prompt and effective remedial action" in response to Snow's complaints about other employees' statements and conduct, ECF No. 2 ¶ 49, "when he was foreclosed from getting on a management path," *id.*, and when he received a smaller raise than other employees, *id.* ¶ 37; ECF No. 17 at 10. But, based on the allegations in the complaint, all of these fail as a matter of law.

First, as discussed in greater detail below with respect to Snow's ADA harassment claim, while the other employees' statements and conduct were unpleasant and offensive, they had, at most, a de minimis impact on Snow's job opportunities and status. *See Tapia v. City of Albuquerque*, 170 F. App'x 529, 534 (10th Cir. 2006) (holding, with respect to a Title VII retaliation claim, that the plaintiff did not "suffer adverse employment action" because "[n]o change in his employment status occurred: his job, pay and benefits at all times remained the same").[2] Accordingly, AutoZone's alleged failure to promptly and effectively address Snow's complaints had, at most, a de minimis effect on his job opportunities and status.

---

[2] Similar standards are generally used to analyze ADA and Title VII claims. *See, e.g.*, *Exby-Stolley v. Bd. of Cnty. Comm'rs*, 906 F.3d 900, 906–07 (10th Cir. 2018).

In addition, Snow alleges that AutoZone did, in fact, address the primary source of his complaints—Martinez. Specifically, Snow alleges that, within approximately five months after he first complained to management, AutoZone conducted an investigation into his allegations and, "[a]s a result of the investigation, [AutoZone] terminated Martinez'[s] employment." ECF No. 2 ¶ 40. Accordingly, under the circumstances presented here, AutoZone's alleged failure to promptly and effectively remedy Snow's complaints did not constitute an adverse employment action.

Second, the court is somewhat perplexed by Snow's contention that he suffered an adverse employment action "when he was foreclosed from getting on a management path." *See* ECF No. 2 ¶ 49. Indeed, Snow alleges that, less than a year after joining AutoZone, he "was placed on the manager track and was promoted to PSM [("Parts Sales Manager")] on February 27, 2022." *Id.* ¶ 43. Accordingly, it is evident that—despite what some employees may have told him—he was not foreclosed from getting on a management path. Thus, there is no adverse employment action to speak of.

Finally, although receiving a lower raise than others could conceivably be an adverse employment action in certain situations, *but see Tapia*, 170 F. App'x at 534 ("No change in his employment status occurred: his job, *pay* and benefits at all times *remained the same*." (emphasis added)); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (rejecting the plaintiff's age and sex discrimination claim because, in part, the plaintiff "admits that her salary and benefits *remained the same*" (emphasis added)), Snow has failed to plead facts that would allow the court to infer that this is one of those situations. Specifically, although Snow alleges that other employees received raises of $3.00 per hour whereas his raise was only $0.08 per hour, ECF No. 2 ¶ 37, he provides no additional information about these other employees, such as their positions, base

salaries, or tenures at AutoZone at the time of the raise.³ Accordingly, without this context and detail, the court is left to speculate whether the $0.08 raise constituted an adverse employment action. As a result, the allegations are insufficient to survive AutoZone's motion to dismiss. *See Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019).

Because Snow has failed to sufficiently allege that he suffered an adverse employment action, the court grants AutoZone's motion to dismiss Snow's ADA discrimination claim.

## II. Claim II: ADA Harassment Claim

AutoZone moves to dismiss Snow's ADA harassment claim. ECF No. 6 at 8–10. Specifically, AutoZone contends that Snow's claim must be dismissed because, to the extent Snow was harassed, it was related to his use of medical marijuana—not his underlying disabilities—and any such harassment was insufficiently severe or pervasive. *Id.* The court agrees that Snow's ADA harassment claim must be dismissed.

Under Tenth Circuit case law, the elements of an ADA harassment claim are: "(1) the plaintiff is a member of a protected group (i.e., he is 'disabled' as defined by the ADA); (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working

---

³ In his response to AutoZone's motion to dismiss, Snow states—in passing—that the other employees who received larger raises were "similarly situated" to him. ECF No. 17 at 10. But, besides the fact that this statement appears outside of the complaint, neither the complaint nor the response contains any factual allegations that support the statement. *Anupama Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) ("[I]t is insufficient for a plaintiff to allege, for instance, that she did not receive an employment benefit that 'similarly situated' employees received. A plaintiff's assertion that she is 'similarly situated' to other employees is 'just a legal conclusion—and a legal conclusion is never enough.' Rather, a plaintiff must allege 'some set of facts'—not just legal conclusions—'that taken together plausibly suggest differential treatment of similarly situated employees.'" (internal citations omitted)).

12

environment." *Callahan v. Commun. Graphics, Inc.*, 657 F. App'x 739, 746–47 (10th Cir. 2016) (unpublished) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).

Here, Snow alleges that he endured seven episodes of "unwelcome and unwanted conduct" during the approximately five and a half months that he worked at AutoZone store # 867. ECF No. 2 ¶ 59. Specifically, Snow points to: (1) when Martinez asked Snow "to sell him 3.5 ounces of marijuana," *id.* ¶¶ 16, 59; (2) when Clark told Snow, "'You're of no use to me because you smoke pot,'" *id.* ¶¶ 22, 59; (3) when Grames asked Snow for a copy of his "medical records and for a copy of his medical marijuana card to send to corporate," *id.* ¶¶ 23, 59; (4) when Clark said to Snow, "'I don't care if you're high, I just need you to drive,'" *id.* ¶¶ 27, 59; (5) when Martinez asked Snow "to procure some cocaine or Valium for him," *id.* ¶¶ 28, 59; (6) when, during a shift, Martinez badgered and ridiculed Snow by claiming that the district manager for the Greater Salt Lake area "was coming to the store to watch [Snow] to see if he was under the influence (of marijuana) while working, stating [Snow] was not promotable, and stating [Snow] would be terminated because of his medical marijuana card," *id.* ¶¶ 29, 59; and (7) when, in response to Snow's complaint that his back was hurting, Martinez said, "'You have a [medical marijuana] card, just go get stoned,'" *id.* ¶¶ 35, 59. From these statements, it is evident that, to the extent Snow was harassed, the harassment was related to his use of medical marijuana, not his underlying disabilities. Because, as discussed with respect to Snow's discrimination claim, the ADA does not protect individuals from such harassment, *see James*, 700 F.3d at 397 n.3; *Eccleston*, 2021 U.S. Dist. LEXIS 52835, at *17–18, Snow's harassment claim is foreclosed and the court grants AutoZone's motion to dismiss the claim.

Moreover, even if the ADA protected individuals against harassment based on medical marijuana use, the court would still dismiss Snow's claim because he has failed to allege

13

harassment sufficiently severe or pervasive that it altered a term, condition, or privilege of his employment. *See Callahan*, 657 F. App'x at 746–47. "A plaintiff claiming a hostile work environment 'must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Williams v. FedEx Corporate Servs.*, 849 F.3d 889, 897 (10th Cir. 2017) (citation omitted). "General harassment alone is not actionable." *Id.*

"In examining whether a plaintiff has made the requisite showing, '[the court] look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* "A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs"—rather, "there must be a steady barrage of opprobrious comments." *Morris v. City of Colo. Springs*, 666 F.3d 654, 666 (10th Cir. 2012) (cleaned up). And "isolated incidents . . . are sufficient to support a hostile work environment claim only when they are 'threatening and severe' or 'especially egregious or extreme.' Most incidents found to meet this standard involve some kind of physical assault." *Brown v. Laferry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (unpublished) (internal citation omitted); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (internal citation omitted)); *Morris*, 666 F.3d at 664 ("[T]he run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a . . . hostile work environment claim.");

14

*EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) ("Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life.").[4]

Here, over an approximately five-month period, Snow experienced seven incidents of allegedly harassing comments and behavior. Accordingly, the incidents were relatively infrequent, isolated occurrences, and the only reasonable inference from the complaint is that Snow did not experience "a steady barrage of opprobrious comments." *See Morris*, 666 F.3d at 666. Moreover, although the comments were unwelcome, annoying, and offensive to Snow, they were not "'threatening and severe' or 'especially egregious or extreme.'" *See Brown*, 708 F. App'x at 522. Indeed, Snow does not allege that he was threatened with violence or experienced such abuse.

In addition, if anything, Snow's job performance and status improved around the time these incidents occurred. Specifically, the day after Martinez told Snow, "You have a [medical marijuana] card, just go get stoned," Snow received a positive performance review and a raise. ECF No. 2 ¶¶ 35, 37. Furthermore, a short time after these incidents, Snow "was placed on the manager track and was promoted" to a parts sales manager position. *Id.* ¶ 43. Thus, the court cannot reasonably infer that the alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of Snow's employment. *See Callahan*, 657 F. App'x at 746–47.

Consequently, Snow has failed to adequately state an ADA harassment claim, and the court grants AutoZone's motion to dismiss the claim.

---

[4] Note that although many of the cases cited here involved claims of harassment under Title VII, "ADA hostile work environment claims are analyzed under the same standards applied to similar Title VII claims." *See Callahan*, 657 F. App'x at 746.

### III. Claim III: ADA Retaliation Claim

AutoZone moves to dismiss Snow's ADA retaliation claim. ECF No. 6 at 10–11. Specifically, AutoZone contends that Snow's claim must be dismissed because Snow "has failed to state any materially adverse action that occurred after the protected activity." *Id.* at 10. The court agrees.

"A prima facie case of retaliation under the ADA requires: '(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012) (citation omitted).

As an initial matter, the court agrees with Snow that his use of medical marijuana and the fact that he reported alleged discrimination based on medical marijuana use do not foreclose his retaliation claim. "Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997)). Accordingly, "in order to prosecute an ADA retaliation claim, a plaintiff need not show that [he] suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices." *Id.*; *see also Holly v. Kindred Healthcare Operating, Inc.*, 51 F. Supp. 3d 1113, 1123–24 (D. Utah 2014) ("Thus, a meritorious retaliation claim can stand even if the underlying discrimination claim fails."). Here, the allegations in the complaint support the inference that, when Snow reported other

16

employees' comments and conduct related to his use of medical marijuana to management, he had a reasonable, good faith belief that those comments and conduct violated the ADA.

Moreover, the court agrees with Snow that, in addition to the formal charges of discrimination that he filed with UALD and the EEOC, his informal complaints to management about other employees' comments and conduct constituted protected activity. *See* ECF No. 17 at 13. "[T]o qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." *See Rangel v. Sanofi Aventis U.S., LLC*, 507 F. App'x 786, 791 (10th Cir. 2013) (unpublished). This can include "voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004); *see also O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) ("Informal complaints to superiors constitute protected activity."). Accordingly, a reasonable inference from the allegations in the complaint is that Snow engaged in protected activity when he complained to management about Martinez's and Clark's comments and actions. *See, e.g.*, ECF No. 2 ¶¶ 18–20, 29, 36.

That said, the court agrees with AutoZone that Snow has failed to sufficiently allege any materially adverse action that occurred after he engaged in the protected activities. To establish an adverse employment action, Snow must show:

> "a reasonable employee would have found the challenged action *materially* adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." "[N]ot everything that makes an employee unhappy is an actionable adverse action." Generally, "petty slights, minor annoyances, and simple lack of good manners" do not qualify. "Otherwise, minor and even trivial employment actions . . . would form the basis of a discrimination suit." Adverse conduct must carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" to be considered actionable.

*Henrie v. Carbon Sch. Dist.*, No. 22-4015, 2023 U.S. App. LEXIS 3365, at *4–5 (10th Cir. Feb. 13, 2023) (unpublished) (internal citations omitted).

Here, Snow contends that he suffered adverse employment actions when (1) his manager told him "that he was not promotable" and (2) "when he received only a $0.08 raise and other employees received larger raises." ECF No. 2 ¶ 75. With respect to the first alleged adverse employment action, the manager's statement was, at most, a "petty slight[]." *See Henrie*, 2023 U.S. App. LEXIS 3365, at *4. This is particularly true given that, within nine months of joining AutoZone, Snow *was* promoted and made a parts sales manager. *See* ECF No. 2 ¶ 43. Moreover, with respect to the raise, Snow has failed to provide sufficient factual details to permit the court to infer that the *raise* he received was discriminatory and adverse, as the court discussed above with respect to his discrimination claim. Without such factual details, the court declines to hold that receiving a raise—even of a small amount—is an adverse employment action. Because Snow has failed to sufficiently allege that he suffered an adverse employment action in retaliation for his protected activities, the court grants AutoZone's motion to dismiss the claim.

## IV.     Claim IV: HIPAA Violation

Because Snow concedes that there is no private right of action under HIPAA and "does not oppose dismissal of [the] claim," ECF No. 17 at 8, the court grants AutoZone's motion to dismiss Snow's HIPAA claim. *See Freier v. Colorado*, 804 F. App'x 890, 892 (10th Cir. 2020) (unpublished) ("HIPAA does not provide a private right of action for the alleged disclosure of confidential medical information.").

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 6) is GRANTED. Specifically:

1. Plaintiff's discrimination, harassment, and retaliation claims (First, Second, and Third Causes of Action) are DISMISSED WITHOUT PREJUDICE.

2. Plaintiff's HIPAA claim against AutoZone (Fourth Cause of Action) is DISMISSED WITH PREJUDICE.

3. Plaintiff's request for a declaratory judgment that Defendant violated Title VII of the Civil Rights Act is DISMISSED WITH PREJUDICE.

DATED this 5th day of September, 2023.

BY THE COURT:

_____
JUDGE JILL N. PARRISH
United States District Judge